UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TI LIMITED,<br><br>                              Plaintiff,<br><br>v.<br><br>DANIEL CHAVEZ; ALIANZA MARCAS E IMAGEN, S.A. De C.V. DBA GRUPO VIDANTA, ALFREDO NEGRETE GONZALES, and DOES 1-100, inclusive,<br><br>                              Defendants. | Case No.:  3:19-cv-01830-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

The matter pending before the Court is the Motion to Dismiss filed by Defendant Alianza Marcas E Imagen, S.A. De C.V.  (ECF No. 31).

## PROCEDURAL BACKGROUND

On July 1, 2019, Plaintiff TI, Limited commenced this action by filing a Complaint in the Superior Court of California for the County of San Diego, assigned case number 37-2019-00034144-CU-BC-CTL, against Defendants Grupo Vidanta, Daniel Chavez, and DOES 1-100, inclusive.  (ECF No. 1-2).  On September 23, 2019, Defendant Chavez

removed the action to this Court pursuant to 28 U.S.C. § 1332, diversity jurisdiction, 28 U.S.C. § 1441(b), and 28 U.S.C. § 1446.  (ECF No. 1).

On September 30, 2019, Defendant Chavez filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Rule 12(b)(3), insufficient process pursuant to Rule 12(b)(4), insufficient service of process pursuant to Rule 12(b)(5), failure to state a claim pursuant to Rule 12(b)(6), and forum non conveniens.  (ECF No. 3).  On October 21, 2019, Plaintiff filed an Amended Complaint, which is the operative pleading in this case, against Defendants Alianza Marcas E Imagen, S.A. De C.V. dba Grupo Vidanta ("Alianza"), Daniel Chavez, Alfredo Negrete Gonzales, and DOES 1-100, inclusive.  (ECF No. 4).  On October 28, 2019, this Court denied as moot Defendant Chavez's Motion to Dismiss (ECF No. 3). (ECF No. 6).

On November 4, 2019, Defendant Chavez filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Rule 12(b)(3), insufficient process pursuant to Rule 12(b)(4), insufficient service of process pursuant to Rule 12(b)(5), failure to state a claim pursuant to Rule 12(b)(6), and forum non conveniens.  (ECF No. 7).  On March 12, 2020, Defendant Chavez filed a Supplemental Motion to Dismiss.  (ECF No. 17).  On April 20, 2020, the Court denied Defendant Chavez's Motion to Dismiss (ECF No. 7) and Supplemental Motion to Dismiss (ECF No. 17).  (ECF No. 21).

On May 22, 2020, Plaintiff filed an Ex Parte Motion for an Order Permitting Service of Process by Email as to Defendants Alianza and Gonzales.  (ECF No. 24).  On June 18, 2020, the Court granted Plaintiff's Ex Parte Motion for an Order Permitting Service of Process by Email as to Defendants Alianza and Gonzales (ECF No. 24).  (ECF No. 27). The Court stated that "Plaintiff may effectuate service by delivering the summons and Amended Complaint to Defendants Alianza Marcas E Imagen S.A. de C.V. dba Grupo Vidanta and Alfredo Negrete Gonzales' last known valid email address."  *Id*. at 7.

1    On July 10, 2020, Defendant Alianza filed a Motion to Dismiss for lack of personal
2  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant
3  to Rule 12(b)(3), insufficient process pursuant to Rule 12(b)(4), insufficient service of
4  process pursuant to Rule 12(b)(5), and forum non conveniens.  (ECF No. 31).  On August
5  3, 2020, Plaintiff filed a Response in opposition (ECF No. 38), an affidavit (ECF No. 39),
6  and objections (ECF No. 40).  On August 10, 2020, Defendant Alianza filed a Reply.  (ECF
7  No. 41).

8                    **ALLEGATIONS OF THE AMENDED COMPLAINT**

9    Plaintiff "is a Wyoming limited liability company with its principal place of business
10  in Los Angeles County, California."   (ECF No. 4 at 2).   "The core component of
11  [Plaintiff]'s software is its proprietary discount travel portal" (the "portal").  *Id*. at 5.
12  Plaintiff's portal "allows authorized users to tap into proprietary travel offerings at steeply
13  discounted rates based on proprietary search methods and other means that [Plaintiff]
14  developed and curated over a period of more than fourteen years."  *Id*.

15    "Defendant [Alianza] is a Mexican corporation with its U.S. headquarters in Dallas,
16  Texas" and "has become the largest time share developer in Latin America . . . ."  *Id*. at 2,
17  5.  Defendant Alianza "spends millions of dollars marketing and advertising its hotels and
18  timeshare properties to persons in the State of California and has been continually doing
19  so since at least December 15, 2008."  *Id*. at 2.  "Defendant Chavez is a Mexican citizen
20  who resides in Dallas, Texas" and "has continuously lived and worked in the United States,
21  including in California, for more than a decade."  *Id*.  Defendant Chavez has "spent the
22  past three years as a Vice President" of Defendant Alianza.  *Id*. at 6.  "Defendant Gonzales
23  is a Mexican citizen who resides in Mexico" and is Defendant Alianza's "Director of
24  Business Intelligence," "Head Legal Counsel," and "Director of Revenue Management."
25  *Id*. at 2, 5, 8, 11.

26    Plaintiff provided Defendant Chavez with access to the portal after Defendant
27  Chavez requested access and promised to make a deal with Plaintiff.  *See id*. at 7.
28  Defendant Chavez made clear that Defendant Alianza "was only interested in discount

airfare for its members, particularly discounted first-class airfare for their VIP members, including those located in the State of California." *Id*. Defendant Chavez sent a letter of intent, which "evidences the agreed upon value of the software." *Id*. at 9. In early December 2016, Defendants Chavez and Gonzales travelled to Plaintiff's facilities in San Diego for a series of meetings. *See id*. at 10.

During a conference call on December 13, 2016, the parties "discussed the detailed specifications for [Defendant Alianza]'s online travel portal," "set milestones for the development process, and [Plaintiff] shared its internal processes and procedures for the software development." *Id*. at 10-11. Over the next eight months, Plaintiff developed the customized software for Defendant Alianza. *See id*. at 11. "All of the work developing the software occurred in California" and Defendant Alianza "was heavily involved in the process . . . ." *Id*.

On April 17, 2017, Plaintiff provided Defendant Alianza "with a detailed software overview and an update regarding the status of development efforts in California." *Id*. "Certain aspects of the software, however, could not be completed without direct input and technical assistance from [Defendant Alianza]." *Id*. In June 2017, Defendant Alianza provided the required information. *See id*. Plaintiff integrated the information provided by Defendant Alianza and established a website for Defendant Alianza's use of the software. *See id*. "While [Defendant Alianza] was the registrant of the domain name, the content on the website (copyright, photography, and the functionality, which is [Plaintiff]'s software) was at all times owned by [Plaintiff]." *Id*.

While beta testing occurred at Defendant Alianza's facilities in Mexico, "the software at all times resided on [Plaintiff]'s servers in California." *Id*. at 12. Between July 5 and July 9, 2017, "the parties tested, verified, fixed, adjusted, and implemented the software across [Defendant Alianza]'s systems." *Id*. Between July 10 and July 13, 2017, Defendant Alianza provided additional feedback, which Plaintiff implemented into the software program from its facility in California. *See id*.

On July 14, 2017, Plaintiff "delivered a final version of the software" to Defendant Alianza. *Id*. "In addition to providing credentials so that [Defendant Alianza] could access the software through [Plaintiff]'s servers, [Defendant Alianza] also insisted on being provided a copy of the source code." *Id*. "Based on [Defendant Alianza]'s representations that the copy of the software would only be used by it for the sole purpose of fixing any errors in functionality, [Plaintiff] provided a final copy of the source code to [Defendant Alianza] at or about the same time that [Plaintiff] informed [Defendant Alianza] that the final version of the software was available to access." *Id*.

After taking possession of Plaintiff's software, Defendant Alianza "ceased all communications, it disconnected the phone numbers provided to [Plaintiff], and it stopped making its monthly payments." *Id*. at 13.  The only subsequent communication occurred in August 2017, in which Defendant Chavez told Plaintiff that Defendant Alianza "would not proceed any further with [Plaintiff]." *Id*.  On September 23, 2017, Defendant Alianza accessed Plaintiff's servers in California by uploading 5,000 of its members into Plaintiff's portal stored on Plaintiff's computer servers in California.  *See id*.  Defendant Alianza continues to use Plaintiff's copyrighted material without Plaintiff's authorization or consent, which Plaintiff provided to Defendant Alianza based Defendant Chavez's false representations.  *See id*.

After taking possession of Plaintiff's software, Defendant Alianza represented to International Cruise & Excursions, Inc. ("International Cruise") that the portal was its own. *See id*.  Defendant Alianza provided International Cruise "with the copy of the source code . . . without [Plaintiff]'s knowledge or consent." *Id*. at 14.  International Cruise transferred Plaintiff's source code to SOR Technology dba Sav-On Resorts ("Sav-On") without Plaintiff's knowledge or consent.  *See id*.  Sav-On used the source code "to launch a new discount travel portal for its customers, including [Defendant Alianza]." *Id*.

Plaintiff alleges the following six causes of action against all Defendants: (1) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030); (2) violation of the California Comprehensive Computer Data Access and Fraud Act (Cal. Pen. Code § 502);

3:19-cv-01830-WQH-KSC

(3) violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426, et seq.); (4) promissory fraud; (5) violation of Cal. Pen. Code § 496; and (6) unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq. *See id.* at 14-26. Plaintiff seeks declaratory relief, injunctive relief, monetary damages, an award of attorneys' fees, costs, pre and post-judgment interest, restitution, and "other costs and further relief as the Court may deem just and proper." *Id.* at 26.

## CONTENTIONS OF THE PARTIES

Defendant Alianza contends that Plaintiff has sued the wrong party. Defendant Alianza asserts that it is a Mexican holding company that holds U.S. trademarks. Defendant Alianza asserts that it has not and does not own resorts, operate time-shares, or use travel-portal software. Defendant Alianza contends that Plaintiff's dispute is with Ventas Riviera Maya, S.A. de C.V. ("VRM"). Defendant Alianza contends that Defendant Chavez signed a letter of intent with Plaintiff on behalf of Grupo Vidanta, a trade name and not a distinct legal entity. Defendant Alianza contends that once Defendant Chavez advised Plaintiff that he lacked authority to bind any entity in the Grupo Vidanta family, Plaintiff agreed that the letter of intent would be non-binding and Plaintiff shifted its focus to negotiate with VRM. Defendant Alianza contends that VRM negotiated and signed a contract with Plaintiff for the portal software at issue in this case. Defendant Alianza contends that VRM paid Plaintiff for the software and that Plaintiff provided the software to VRM. Defendant Alianza contends that VRM sued Plaintiff in Mexico for failing to provide properly functioning software. Defendant Alianza contends that service of process in this case was improper, that this Court lacks general and specific personal jurisdiction over Defendant Alianza, and that any dispute between Plaintiff and Defendant Alianza should be resolved in Mexico pursuant to forum non conveniens and the forum-selection clause in Plaintiff's contract with VRM.

Plaintiff contends that its dispute is with Defendant Alianza, not VRM, because Defendant Chavez acted as an agent with authorization to bind Defendant Alianza. Plaintiff contends that Defendant Alianza committed purposeful acts in California, which

caused damage to Plaintiff, through Defendant Chavez and its other authorized agents and officers.  Plaintiff contends that service was proper and that this Court has specific personal jurisdiction over Defendant Alianza.  Plaintiff contends that the forum non conveniens factors weigh in favor of this Court retaining jurisdiction and that the forum-selection clause does not apply to Defendant Alianza.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where the court considers the motion without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011).  "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." *Id*. "[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit . . . but we resolve factual disputes in the plaintiff's favor . . . ." *Id*. (first alteration in original) (internal citations omitted).  In other words, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

## DISCUSSION

Defendant Alianza contends that this Court lacks specific jurisdiction.  Defendant Alianza contends that it has not purposefully directed its activities toward California because it has not committed an intentional act aimed at California that it knew was likely to cause harm in California.  Defendant Alianza contends that Plaintiff's claims do not arise out of Defendant Alianza's contacts with California because Plaintiff's claims would have arisen even if Defendant Alianza never existed because Plaintiff has sued the wrong party. Defendant Alianza contends that exercising specific jurisdiction over Defendant Alianza

would be unreasonable pursuant to the factors of fair play and substantial justice. Defendant Alianza contends that the only way for personal jurisdiction to exist is if Defendant Alianza is an alter ego of VRM, which Plaintiff fails to establish.

Plaintiff contends that this Court has specific jurisdiction over Defendant Alianza. Plaintiff contends that specific jurisdiction presumptively exists because Defendant Alianza was served with process. Plaintiff contends that Defendant Alianza purposely directed its activities into California, that Plaintiff's claims arise out of Defendant Alianza's California-related activities, and that exercising specific jurisdiction over Defendant Alianza would comport with the principles of fair play and substantial justice.

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017). "California authorizes its courts to exercise jurisdiction to the full extent that such exercise comports with due process." *Id.*; *see* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). "Accordingly, 'the jurisdictional analyses under [California] state law and federal due process are the same.'" *Axiom Foods*, 874 F.3d at 1067 (alteration in original) (quoting *Mavrix Photo*, 647 F.3d at 1223). "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant–general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods*, 874 F.3d at 1068 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "Two principles animate the 'defendant-focused' inquiry." *Id.* (quoting *Walden*, 571 U.S. at 284). "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the defendant *himself* creates with the forum state.'" *Id.* (quoting *Walden*, 571 U.S. at 284). "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* (quoting *Walden*, 571 U.S. at 285). "It

follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id*. (quoting *Walden*, 571 U.S. at 286).

"In a specific jurisdiction inquiry, we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). "A strong showing on one axis will permit a lesser showing on the other." *Id*. "While a single act can support jurisdiction" in a tort case, "the act must first create[ ] a substantial connection with the forum." *Axiom Foods*, 874 F.3d at 1068 (alteration in original). "Put differently, some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum." *Id*. "A defendant's 'random, fortuitous, or attenuated contacts' will not suffice." *Id.* (quoting *Walden*, 571 U.S. at 286).

The Court of Appeals employs a three-prong test to assess whether a defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum";
> (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and
> (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

*Id.* (alteration in original). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id*. "If the plaintiff meets that burden, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1068-69.

### Purposeful Direction and "Arising Out of"

For causes of action sounding in tort, the Court of Appeals applies the purposeful direction test, rather than the purposeful availment test, which generally applies to claims

arising from a contract.  *See id.* at 1069 ("Where, as here, a case sounds in tort, we employ the purposeful direction test.").  The purposeful direction test, "often referred to as the 'effects' test, derives from *Calder v. Jones*, 465 U.S. 783 . . . (1984)."  *Id.*  To satisfy the *Calder* purposeful direction test, "[t]he defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.*

The Court of Appeals has "construe[d] 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004).  In regards to express aiming, the Supreme Court has clarified that courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum."  *Axiom Foods*, 874 F.3d at 1070 (quoting *Walden*, 571 U.S. at 1124-25).  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Walden*, 571 U.S. at 1125.  The Court of Appeals has stated that "two factors are considered in determining whether an action is expressly aimed at the forum state:

> (1) First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State. ... Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.
> (2) Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) (alteration in original) (citing *Walden*, 571 U.S. at 1122).  The Court of Appeals has stated that "the 'brunt' of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."  *Yahoo!*, 433 F.3d at 1207.

The second prong of the specific jurisdiction test requires that the plaintiff's claim arise out of, or relate to, defendant's forum-related activities. The Court of Appeals "follows the but for test" to determine whether a plaintiff's claim "arises out of or relates to the defendant's forum-related activities." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Under this test, the question is: but for Defendant's conduct in California, would Plaintiff's claim have arisen? *See Ballard*, 65 F.3d at 1500 ("The question, therefore, is this: but for Royal's contacts with the United States and California, would Ballard's claims against the Bank have arisen?").

"In any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo!*, 433 F.3d at 1207. "[W]e do not read *Calder* necessarily to require in purposeful direction cases that all (or even any) jurisdictionally relevant effects have been caused by wrongful acts." *Id.* at 1208. "We therefore analyze all of [Defendant]'s contacts with California relating to its dispute with [Plaintiff], irrespective of whether they involve wrongful actions by [Defendant]." *Id.*

The Amended Complaint alleges that

This Court has personal jurisdiction over each Defendant because he or it has (i) committed acts of computer fraud in this judicial District and this State; and/or (ii) regularly does and/or has done business, solicits or has solicited business, engages or has engaged in other persistent courses of conduct, and/or derives or has derived substantial revenue from products and/or services provided to persons in this District and in this State. This Court's personal jurisdiction over Defendants is additionally established by California Penal Code § 502(j), which provides that "a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction." As described below, Defendants unlawfully accessed [Plaintiff]'s computers, computer systems, or computer networks—all of which have been located in Los Angeles at all times relevant to this Amended Complaint. Further, each Defendant knew that [Plaintiff]'s computers, computer systems, and computer network were located in California; that

[Plaintiff] was located in Los Angeles County, California; and that [Plaintiff] would suffer damages in California.

Defendant[s] [Alianza], Chavez, and Gonzales are further subject to personal jurisdiction by this Court because [Plaintiff] shared certain trade secrets with Defendants at [Plaintiff]'s facility in San Diego California, which Defendants subsequently stole and trafficked in, including providing the stolen trade secrets to others in San Diego, California. In addition, [Defendant Alianza], through [Defendant] Chavez, [Defendant] Gonzales, and/or as its authorized agents, committed such purposeful acts and/or transactions in the San Diego County, California that they reasonably knew and/or expected that they could be hailed into a California court as a future consequence of such wrongful activity. Each of the Defendants committed the torts alleged, or some part thereof, in San Diego, California.

(ECF No. 4 at 3-4).

In support of its Motion to Dismiss, Defendant Alianza submits declarations and exhibits.  Defendant Alianza's agent states in a sworn declaration that

. . . Chavez [ ]–a defendant in this lawsuit–has never been a director, officer, employee, or agent of [Defendant] Alianza. Specifically, he has never been [Defendant] Alianza's Vice President or Chief Operating Officer and has never acted on [Defendant] Alianza's behalf. In fact, [Defendant] Alianza does not have, and has never had, a Vice President or Chief Operating Officer.

Sepúlveda Decl. ¶ 11, ECF No. 31-6 at 2.  Defendant Alianza's agent further states that

[Defendant] Alianza is a holding company that holds intellectual property and does nothing else.

[Defendant] Alianza's portfolio includes U.S. trademarks.

[Defendant] Alianza does not manufacture, distribute, package, invoice, ship, or sell products or services. Specifically, [Defendant] Alianza does not own timeshares, hotels, resorts, or any other vacation properties; it never has. Nor does [Defendant] Alianza manage any such properties or offer any products or services related to vacations; it never has.

[Defendant] Alianza does not market or advertise timeshares, hotels, resorts, or any other vacation properties. In fact, [Defendant] Alianza does not market or advertise any products or services whatsoever; it never has. Thus,

[Defendant] Alianza does not market or advertise within the United States or specifically within California.

[Defendant] Alianza does not own, maintain, operate, manage, or otherwise control a website. Specifically, [Defendant] Alianza does not own, maintain, operate, manage, or otherwise control an online travel platform or travel portal.

[Defendant] Alianza has never had customers. It has never offered memberships of any type and therefore has never had any customer "members." [Defendant] Alianza does not generate leads on potential customers; it never has.

[Defendant] . . . Chavez [ ] is not authorized to, and never has, signed a contract on [Defendant] Alianza's behalf. Instead, [Defendant] Alianza's Board of Directors sign contracts on [Defendant] Alianza's behalf.

*Id*. ¶¶ 34-40, ECF No. 31-6 at 3-5.  Defendant Alianza's agent further states that

Grupo Vidanta is not a standalone legal entity. It is a trade name that a family of Mexican companies use in the business of, among other activities, developing and selling timeshare interests in first-class resorts throughout Mexico.

[Defendant] Alianza is one of the entities that exists under the Grupo Vidanta trade name. [Defendant] Alianza authorizes affiliated Grupo Vidanta entities to use [Defendant] Alianza's registered trademarks.

[Defendant] Alianza observes corporate formalities distinct from the other entities operating under the Grupo Vidanta trade name. For example, [Defendant] Alianza maintains its own bank accounts and financial records, holds separate board meetings, and has separate bylaws.

[Defendant] Alianza is not an agent of any other Grupo Vidanta entity, nor is any other Grupo Vidanta entity an agent of [Defendant] Alianza.

[Defendant] Alianza does not own or control the website www.grupovidanta.com. It does, however, allow affiliated Grupo Vidanta entities to use its trademarks on the website.

*Id*. ¶¶ 41-45, ECF No. 31-6 at 5.  Defendant Alianza's agent further states that

3:19-cv-01830-WQH-KSC

Neither [Defendant] Alianza nor anyone acting on its behalf has communicated with Plaintiff . . . . Specifically, [Defendant] Alianza has never communicated with [Plaintiff] about travel-platform software, offered to pay [Plaintiff] to develop such software, or discussed with [Plaintiff] compensation for software or a travel platform. [Defendant] Alianza has also never participated in any conference calls with [Plaintiff] or anyone affiliated with [Plaintiff]. Because [Defendant] Alianza has never communicated with [Plaintiff] to begin with, it has also never ceased communicating with [Plaintiff].

Neither [Defendant] Alianza nor anyone acting on its behalf has ever worked with [Plaintiff] in any capacity whatsoever, including to develop software or to beta test software. [Defendant] Alianza has never been involved with any testing, verifying, fixing, adjusting, or implementing software with [Plaintiff]–whether in July of 2017 or at any other time. [Defendant] Alianza has neither provided feedback to [Plaintiff] about software nor received status updates or software overviews from [Plaintiff].

Neither [Defendant] Alianza nor anyone acting on its behalf has ever been obligated to make, has made, or has ever stopped making monthly payments to [Plaintiff].

Neither [Defendant] Alianza nor anyone acting on its behalf has ever been to [Plaintiff]'s supposed facilities in San Diego, California.

Neither [Defendant] Alianza nor anyone acting on its behalf has ever communicated with International Cruise . . . . Specifically, [Defendant] Alianza has never communicated with [International Cruise] regarding travel-platform software.

Neither [Defendant] Alianza nor anyone acting on its behalf has ever accessed, used, or stolen any software that [Plaintiff] developed. [Defendant] Alianza has never had the intent to steal software that [Plaintiff] developed. [Defendant] Alianza has never accessed [Plaintiff]'s servers. As discussed above, [Defendant] Alianza does not have customer "members," which means it has never uploaded "members" to any [Plaintiff] software, travel platform, or server.

Neither [Defendant] Alianza nor anyone acting on its behalf has ever had access to or control of [Plaintiff]'s alleged trade secrets, including any source code, travel-platform software, or internal software-development

processes and procedures. Nor has [Defendant] Alianza ever sought or insisted on access to [Plaintiff]'s trade secrets. Specifically, [Defendant] Alianza has never possessed, accessed, controlled, or otherwise taken any action regarding the software [Plaintiff] alleges that it delivered to "Vidanta" on July 14, 2017. Because [Defendant] Alianza has never possessed any of [Plaintiff]'s trade secrets, [Defendant] Alianza has necessarily never shared [Plaintiff]'s trade secrets with others-whether in San Diego, California, or anywhere else in the world.

Neither [Defendant] Alianza nor anyone acting on its behalf has ever had knowledge of whether [Plaintiff] has or has had computers, computer systems, and computer networks. Specifically, [Defendant] Alianza has never known the location of any [Plaintiff] computers.

*Id.* ¶¶ 46, 48-49, 51-55, ECF No. 31-6 at 5-7.

Defendant Alianza submits the sworn declaration of an agent for VRM stating that VRM is a "legal entity organized under the laws of Mexico and headquartered in Puerto Vallarta, Jalisco, Mexico." Gutiérrez Decl. ¶ 2, ECF No. 31-7 at 2. VRM's agent states that VRM provides and promotes products and services related to the tourism industry and acts as a vendor for Mexican tourism and real-estate businesses "under the trade name Grupo Vidanta." *Id.* ¶ 4, ECF No. 31-7 at 2. VRM's agent states that "[o]n January 27, 2017, VRM executed a contract with [Plaintiff] for the licensing of the travel-portal software that is at issue in this lawsuit . . . ." *Id.* ¶ 6, ECF No. 31-7 at 2.

VRM's agent states that while negotiating the contract, Defendant Chavez "signed a Letter of Intent, purportedly on behalf of 'Grupo Vidanta.'" *Id.* ¶ 8, ECF No. 31-7 at 3. VRM's agent states that when Defendant Chavez signed the Letter of Intent, Defendant Chavez "did not possess the authority to enter into any binding contractual obligations on behalf of VRM or any other company making use of the Grupo Vidanta trade name." *Id.* VRM's agent states that at VRM's request, Defendant Chavez secured from Plaintiff's representative "a written acknowledgement that the Letter of Intent was in all respects non-binding." *Id.*

1   VRM's agent states that the contract provides that "the parties to the commercial
2   relationship contemplated by the Letter of Intent are [Plaintiff] and VRM." *Id*. ¶ 9, ECF
3   No. 31-7 at 3.  VRM's agent states that the contract states that "VRM and [Plaintiff] signed
4   a letter of intent (LOI) and set forth guidelines for the parties' analysis and possible
5   execution of a license agreement involving the 'software'." *Id*.  VRM's agent states that
6   the contract "contains a merger clause as well, which states that the Contract '*supersedes*
7   *all* previous communications, representations, *letters of intent*, understandings and
8   agreements, either oral or written, between the parties . . .' . . . ." *Id*. ¶ 10, ECF No. 31-7
9   at 3 (first alteration in original).  VRM's agent states that the contract contains a forum-
10  selection clause, which requires any controversies arising out of or relating to the contract
11  to be resolved in Mexican courts.  *See id*. ¶ 11, ECF No. 31-7 at 3.  VRM's agent states
12  that the contract provides that if a party breaches a material term, the innocent party can
13  terminate the contract by giving notice of the breach and allowing 30 days to cure.  *See id*.
14  ¶ 12, ECF No. 31-7 at 3.

15      VRM's agent states that Plaintiff provided the software to VRM, that the software
16  did not function as promised, and that VRM gave Plaintiff notice of the breach and an
17  opportunity to cure but Plaintiff failed to do so.  *See id*. ¶ 13, ECF No. 31-7 at 3.  VRM's
18  agent states that the contract terminated on July 31, 2017 and that VRM ceased use of the
19  software, other than in connection with Mexican legal proceedings.  *See id*.  VRM's agent
20  states that VRM sued Plaintiff in Mexican court but Plaintiff has refused to appear and has
21  defaulted.  *See id*. ¶ 14, ECF No. 31-7 at 4.

22      VRM's agent states that Plaintiff's "relationship has only ever been with VRM and
23  no other entity using the Grupo Vidanta trade name." *Id*. ¶ 15, ECF No. 31-7 at 4.  VRM's
24  agent states that any actions taken by representatives with other entities operating under
25  the Grupo Vidanta trade name, "relating in any way to the Contract or the software
26  [Plaintiff] was to provide under the Contract were undertaken by such persons exclusively
27  in their capacity as agents or representatives of VRM." *Id*. ¶ 19, ECF No. 31-7 at 4.

28

16

VRM's agent states that VRM and Defendant Alianza have no contracts with each other, that VRM is not Defendant Alianza's agent, that Defendant Alianza is not VRM's agent, that VRM does not control Defendant Alianza's actions, and that Defendant Alianza does not control VRM's actions. *See id.* ¶ 16, ECF No. 31-7 at 4. VRM's agent states that Plaintiff provided the software to VRM, that Plaintiff did not provide the software to Defendant Alianza, and that VRM did not provide the software to Defendant Alianza. *See id.* ¶ 17, ECF No. 31-7 at 4. VRM's agent states that at no point did Defendant Alianza participate in any discussions or communications with Plaintiff regarding the contract or any other topic. *See id.* ¶ 20, ECF No. 31-7 at 4.

In support of its Response in opposition, Plaintiff submits a declaration and exhibits. Plaintiff's Director of Operations states in a sworn declaration that

> As of 2016 [Plaintiff], on the one hand, and [ ] Chavez [ ] (a defendant in this lawsuit), on the other hand, were engaged in discussions in furtherance of the possibility of a business venture between [Plaintiff] and a business entity, Defendant[] Alianza . . . , which I understand and believe was founded by [Defendant] Chavez's father and is Latin America's largest timeshare developer and with which [Defendant] Chavez was affiliated. The prospective business venture would have enabled [Defendant Alianza] to enhance its businesses through its and its customers' permitted access to and use of [ ] [Plaintiff's] Travel Platform.

> In the course of discussions, [Defendant] Chavez represented that with respect to [ ] [Plaintiff's] Travel Platform, [Defendant Alianza] was only interested in providing discount airfares for its members, particularly discounted first-class airfares for its VIP members, including those located in California. At that time, (and at present), [Plaintiff]'s software pertinent to airfares was hosted on [Plaintiff]'s servers at its San Diego facility.

> In furtherance of those discussions, during the first week of December, 2016 [Defendant] Chavez personally met with several [of Plaintiff's] representatives, including myself, at [Plaintiff]'s San Diego facility. Before the meeting, [Plaintiff] had given [Defendant] Chavez the option of meeting with [Plaintiff] at either the Woodland Hills or San Diego facility. [Defendant] Chavez requested the latter because of the location of [Plaintiff]'s operations there which were pertinent to the provisions of airfares to [Defendant Alianza]'s clients and their customers.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

>   At the very beginning of the meeting, we had [Defendant] Chavez sign a non-disclosure agreement on behalf of himself and Grupo Vidanta, (the "NDA"). A true and correct copy of the NDA is attached hereto as Exhibit 1. I personally watched [Defendant] Chavez sign the NDA. The address stated in the NDA for [Defendant] Chavez was provided directly by him. The meetings with [Defendant] Chavez lasted during the course of one day, from sometime after 12:00 p.m. (because [Defendant] Chavez's arrival was delayed) until sometime after sunset. I was personally present at the meetings, during which a wide variety of subjects pertinent to the negotiations for the potential business opportunity were discussed.

>   One such subject was [Plaintiff]'s servers. During the meetings, [Defendant] Chavez specifically asked about their locations, and he was told that they were in Woodland Hills and San Diego. At [Defendant] Chavez's request, during the meetings he was shown the San Diego facility servers. The issue arose because, during the meetings, [Defendant] Chavez represented his and [Defendant Alianza]'s preferences that the servers be physically relocated outside of the U.S.A., (with Honduras specifically suggested), because of what [Defendant] Chavez represented was a fear that in the event of power outages or anything else causing service interruptions, problems would arise between [Defendant Alianza] and its customers. [Plaintiff] did not agree to this condition.

>   Attached herein as Exhibit 2 is a true and correct copy of [Plaintiff]'s Agreement with . . . VRM . . . , dated February 1, 2017, signed by Director General, Alberto Gamez.

Daniels Decl. ¶¶ 6-11, ECF No. 39 at 2-4.

In this case, Defendant Alianza has come forward with evidence demonstrating that it is a holding company for intellectual property; that it does not own, maintain, operate, manage, or control an online travel portal; that Defendant Chavez did not act on its behalf; and that it did not enter into an agreement or contract with Plaintiff. "[P]laintiff cannot simply rest on the bare allegations of its [Amended] [C]omplaint" because the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit . . . ." *Mavrix Photo,* 647 F.3d at 1223 (internal citations omitted). Plaintiff bears the burden to

"make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id*.

The Amended Complaint alleges that Defendant Chavez emailed Plaintiff a signed copy of a letter of intent. *See* ECF No. 4 at 9. Exhibit A to the Amended Complaint is a letter of intent signed by Defendant Chavez on behalf of Grupo Vidanta and Al Gamez on behalf of Plaintiff on November 22, 2016. *See* Ex. A to Amended Complaint, ECF No. 4 at 35. The evidence in the record demonstrates that "Grupo Vidanta is not a standalone legal entity" and "is a trade name that a family of Mexican companies" including Defendant Alianza. Sepúlveda Decl. ¶ 41-42, ECF No. 31-6 at 5. The evidence in the record demonstrates that Defendant Chavez "did not possess the authority to enter into any binding contractual obligations on behalf of VRM or any other company making use of the Grupo Vidanta trade name" including Defendant Alianza and that Defendant Chavez secured from Plaintiff "a written acknowledgement that the Letter of Intent was in all respects non-binding." Gutiérrez Decl. ¶ 8, ECF No. 31-7 at 3.

Plaintiff submits a declaration describing Defendant Chavez's December 2016 visit to Plaintiff's San Diego facility during which Defendant Chavez signed a non-disclosure agreement "between Grupo Vidanta, Mayan Group, Daniel Omar Chavez Saul *("Receiving Party")* . . . and TI Limited, IDS INC *("Disclosing Party")* . . . ." *See* Daniels Decl. ¶¶ 8-9, ECF No. 39 at 3; Ex. 1 to Daniels Decl., ECF No. 39 at 6 (emphasis omitted).

The non-disclosure agreement was signed by the "Disclosing Party" and the "Receiving Party." *See* Ex. 1 to Daniels Decl., ECF No. 39 at 6. Although the signatories' names are not stated, the signatures match those found on the letter of intent. *See id.*; Ex. A to Amended Complaint, ECF No. 4 at 35. The record demonstrates that Defendant Chavez and Plaintiff signed the non-disclosure agreement. Although the date adjacent to the parties' signatures on the non-disclosure agreement is December 2, 2017, Plaintiff's declaration states that the non-disclosure agreement was signed "during the first week of December 2016 . . . ." *See* Ex. 1 to Daniels Decl., ECF No. 39 at 6; Daniels Decl. ¶¶ 8-9,

3:19-cv-01830-WQH-KSC

ECF No. 39 at 3.  The non-disclosure agreement does not reference Defendant Alianza or provide any inference that Defendant Chavez was an agent of Defendant Alianza.

Plaintiff's declaration further describes a February 1, 2017 contract signed by VRM and Plaintiff.  *See* Daniels Decl. ¶ 11, ECF No. 39 at 4.  Exhibit 2 to Plaintiff's declaration and Exhibit A to the declaration of VRM's agent is a contract signed by VRM and Plaintiff on February 1, 2017.  *See* Ex. 2 to Daniels Decl., ECF No. 39 at 16; Ex. A to Gutiérrez Decl., ECF No. 31-9 at 10.   The signatures on the contract are those of VRM's Administrative Director David Garcia Velasco/Armando Peralta and Plaintiff's Director General Alberto Gomez.  *See* Ex. 2 to Daniels Decl., ECF No. 39 at 16; Ex. A to Gutiérrez Decl., ECF No. 31-9 at 10.

The contract between VRM and Plaintiff states that "VRM and [Plaintiff] signed a letter of intent (LOI)" and that "[t]his Agreement (including any attachments and addenda hereto) contains the entire agreement of the parties with respect to the subject matter hereof and terminates and supersedes all previous communications, representations, letters of intent, understandings and agreements, either oral or written, between the parties with respect thereto."  *See* Ex. 2 to Daniels Decl., ECF No. 39 at 8, 15; Ex. A to Gutiérrez Decl., ECF No. 31-9 at 2, 9.

The evidence in the record demonstrates that VRM and Defendant Alianza are separate entities with no control over the each other's actions.   There is no evidence demonstrating that Defendant Chavez acted on behalf of Defendant Alianza at any time. The Court concludes that Plaintiff fails to present sufficient evidence to "make a prima facie showing of jurisdictional facts to withstand the motion to dismiss" by establishing that Defendant Chavez signed a letter of intent on behalf of Grupo Vidanta or VRM on November 22, 2016; that Defendant Chavez and Plaintiff signed a non-disclosure agreement in December 2016; and that VRM and Plaintiff signed a contract on February 1, 2017.  *Mavrix Photo*, 647 F.3d at 1223.  The Court concludes that Defendant Alianza has not "committed an intentional act, [ ] expressly aimed at the forum state, [ ] causing harm that [it] knows is likely to be suffered in the forum state." *Axiom Foods*, 874 F.3d at

1069.  The Court need not determine whether specific personal jurisdiction is lacking for other reasons because Plaintiff has not met its burden of establishing the first prong for specific jurisdiction.  *See e.g.*, *Aton Ctr., Inc. v. CareFirst BlueCross BlueShield*, No. 3:20-cv-00541-WQH-BGS, 2020 WL 4464482, at * 9 (S.D. Cal. Aug. 3, 2020) (same).[1]

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Alianza Marcas E Imagen, S.A. De C.V. (ECF No. 31) is GRANTED.

Dated:  December 3, 2020

Hon. William Q. Hayes
United States District Court

---

[1] The Court does not rule on whether venue is improper pursuant to Federal Rule of Civil Procedure 12(b)(3), whether process was insufficient pursuant to Rule 12(b)(4), whether service of process was insufficient pursuant to 12(b)(5), or whether Plaintiff's Amended Complaint should be dismissed as to Defendant Alianza pursuant to forum non conveniens.