UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TI, LIMITED,<br><br>  Plaintiff,<br><br>v.<br><br>DANIEL CHAVEZ; ALIANZA MARCAS E IMAGEN, S.A. De C.V.; ALFREDO NEGRETE GONZALEZ; and DOES 1-100, inclusive,<br><br>  Defendants. | Case No.: 3:19-cv-01830-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Summary Judgment filed by Defendant Daniel Chavez. (ECF No. 90).

**I.  PROCEDURAL BACKGROUND**

On July 1, 2019, Plaintiff TI, Limited commenced this action by filing a Complaint in the Superior Court of California for the County of San Diego, assigned case number 37-2019-00034144-CU-BC-CTL, against Defendants Grupo Vidanta, Daniel Chavez, and DOES 1-100, inclusive. (ECF No. 1-2). On September 23, 2019, Defendant Chavez removed the action to this Court pursuant to 28 U.S.C. § 1332, diversity jurisdiction, 28 U.S.C. § 1441(b), and 28 U.S.C. § 1446. (ECF No. 1).

On October 21, 2019, Plaintiff filed an Amended Complaint against Defendants Alianza Marcas E Imagen, S.A. De C.V. dba Grupo Vidanta,[1] Daniel Chavez, Alfredo Negrete Gonzales,[2] and DOES 1-100, inclusive. (ECF No. 4). Plaintiff alleges that, "up to this day, Vidanta continues to use the copyrighted material owned by [Plaintiff] . . . without [Plaintiff]'s authorization or consent, which [Plaintiff] provided to Vidanta based on the false representations of [Defendant] Chavez . . . ." (ECF No. 4 at 13). Plaintiff alleges the following six causes of action against all Defendants: (1) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) ("CFAA"); (2) violation of the California Comprehensive Computer Data Access and Fraud Act (Cal. Pen. Code § 502) ("CPC § 502"); (3) violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426, et seq.) ("CCC § 3426"); (4) promissory fraud; (5) violation of Cal. Pen. Code § 496; and (6) unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq. *See id*. at 14-26. Plaintiff seeks declaratory relief, injunctive relief, monetary damages, an award of attorneys' fees, costs, pre- and post-judgment interest, restitution, and "further relief as the Court may deem just and proper." *Id*. at 26.

On November 4, 2019, Defendant Chavez filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Rule 12(b)(3), insufficient process pursuant to Rule 12(b)(4), insufficient service of process pursuant to Rule 12(b)(5), failure to state a claim pursuant to Rule 12(b)(6), and forum non conveniens. (ECF No. 7). On March 12, 2020, Defendant Chavez filed a Supplemental Motion to Dismiss. (ECF No. 17). On April 20, 2020, the Court

---

[1] On December 3, 2020, this Court granted the motion to dismiss by Defendant Alianza Marcas E Imagen, S.A. De C.V. dba Grupo Vidanta. (ECF No. 49).

[2] The record shows proof of service by electronic transmission on Defendant Alfredo Negrete Gonzales on June 19, 2020. Plaintiff has failed to proceed further against this Defendant. Pursuant to Local Rule 41.1, "[a]ctions or proceedings which have been pending in this court for more than six months, without any proceeding or discovery having been taken therein during such period, may, after notice, be dismissed by the court for want of prosecution." S.D. Cal. Civ. Local Rule 41.1. The Court finds that dismissal without prejudice is appropriate at this stage in the litigation.

denied Defendant Chavez's Motion to Dismiss and Supplemental Motion to Dismiss. (ECF No. 21).

On June 18, 2021, Defendant Chavez filed a Motion for Summary Judgment. (ECF No. 90).[3] On July 12, 2021, Plaintiff filed a Response in opposition. (ECF No. 91). On July 19, 2021, Defendant Chavez filed a Reply. (ECF No. 92). On August 5, 2021, the Court heard oral argument on Defendant Chavez's Motion for Summary Judgment. (ECF No. 95).

## II.   FACTS[4]

Defendant Chavez is the son of the founder of a group of companies competing in Mexico under the trade name Grupo Vidanta. From 2015 to 2018, Defendant Chavez was employed by Servicios Turisticos Exclusivos S.A. de C.V. ("Servicios"), a Mexican business that operated as part of the Grupo Vidanta brand. As an employee of Servicios, Defendant Chavez was given the title of vice president of Grupo Vidanta.

Plaintiff developed a "travel . . . booking software" (hereinafter "portal" or "platform"). (ECF No. 91-1 at 5). In early 2016, Defendant Chavez and one of Plaintiff's principals, Al Gamez, discussed the portal at a meeting in Dallas. "Gamez told [Defendant] Chavez his company was the second largest seller of airplane tickets in the United States and with its market power had 'amazing pricing discounts' and 'could beat anybody else' by offering discounts 15% or lower than websites like Booking.com, Cheaptickets.com, or

---

[3] Defendant Chavez requests the Court to take judicial notice of Exhibits 3 (ECF No. 90-4 at 90-93), 4 (*Id*. at 94-95), 7 (*Id*. at 104-05), 8 (*Id*. at 106-07), 13 (ECF No. 90-5 at 39-44), 15 (*Id*. at 50-82), and 16 (*Id*. at 83-113) to the Friedman Declaration filed in support of Defendant Chavez's Motion for Summary Judgment. *See* ECF No. 90-7. Defendant Chavez further requests the Court to take judicial notice of "[t]he documents obtained from the Mexico action . . . ." (ECF No. 92-3 at 31-32, 35-36). The Court has not considered these exhibits or the documents in resolving this Order. Defendant Chavez's requests for judicial notice are denied. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary.").

[4] The parties have filed evidentiary objections, which have been reviewed by the Court. *See* ECF No. 91-1; 91-2; 91-4; 92-1; 92-2. The objections to the evidentiary materials relied upon in this order are overruled on the grounds that the evidence could be presented in admissible form at trial. *See Fonseca v. Sysco Food Servs. of Ariz. Inc.,* 374 F.3d 840, 846 (9th Cir. 2004).

Kayak.com." (ECF No. 91-2 at 5). To continue discussions regarding licensing Plaintiff's software, Gamez insisted that Defendant Chavez sign a letter of intent.

On November 1, 2016, Gamez provided Defendant Chavez "a password to access the travel platform so that he could see how the platform returned the lowest rates for travel." (ECF No. 92-1 at 10). Gamez stated in a November 1, 2016 email to Defendant Chavez that

> Here is your unique access code created specifically for you
> . . .
> Enter:
> Member Number: 173010314
> Password: demouser
> Feel free to navigate my portal.

(ECF No. 91-1 at 112 (emphasis omitted)). Defendant Chavez states that "he was never provided [with], used, or directed anyone else to use the danielvida username to log into any website, including preferredpassport.com." (ECF No. 91-2 at 23; *see also* ECF No. 90-3 at 3-4).

On November 19, 2016, Defendant Chavez stated in a text message to Gamez

> Great news partner! My father has given me the OK to move forward with this. He imposed an adjustment on Exit sales revenue share because our exits will include our own inventory, so on that initial part he wants to revenue share 6% of the net gain, which at 50% marketing cost means 3% of the actual price of the Exits. With my analysis you will make millions over the years from this deal! I will be in meetings all weekend. Can we touch base Monday? Let's finalize this and get started!

(ECF No. 92-1 at 13). On November 22, 2016, Defendant Chavez stated in an email to Gamez

> Here is a partial revision of the LOI focusing on the change that my father requested, which is to make revenue share derived from Exits 3% of the Revenue. We have lots of marketing costs associated with our Exits because we use them to fund street sales (outhouse), so we ran our numbers and the 3% of Revenue is higher than a 10% of margin, but we can't open our books and get you involved in our management. . . . "We are very excited to partner with you To leverage your expertise, and to also capture all the lead gen

> opportunities we have discussed independent of the platform. This should result in great long term profit for you, and should be a solid win - win for all parties involved.!

*Id.* at 15-16 (alteration in original). Defendant Chavez stated that he was sending the proposed letter of intent to other Grupo Vidanta executives, including Grupo Vidanta's corporate counsel.

On November 22, 2016, Defendant Chavez signed the letter of intent to license Plaintiff's software on behalf of "Buyer: Grupo Vidanta" and Gamez signed on behalf of "Seller T.I. Limited LLC . . . ." (ECF No. 91-2 at 6). Defendant Chavez signed the letter of intent "immediately below the paragraph reading: By signing below each signatory warrants and represents he has the authority to execute this Agreement for the company he is representing and that the terms of this Agreement are acknowledged and accepted by each said company." (ECF No. 92-1 at 25).

The letter of intent defined the principal terms of the proposed transaction. The letter of intent stated that it "represents an enforceable legal contract but is intended to be the foundation of a subsequent and more formal written contract." (ECF No. 91-2 at 6 (emphasis omitted)). Paragraph 1(c) of the letter of intent stated that "[a]ll of the terms and conditions of the proposed transaction would be stated in the Licensing Agreement, to be negotiated, agreed and executed . . . ." *Id.* at 7 (alterations in original) (emphasis omitted). The letter of intent further stated that

> Binding Obligation. Except for Sections 1(c) and 2 through 6, THIS LETTER OF INTENT CONSTITUTES AND CREATES A BINDING AGREEMENT, AND SHALL BE DEEMED TO CONSTITUTE A LEGALLY BINDING AND ENFORCEABLE OBLIGATION ON THE PART OF BOTH PARTIES. THE EXECUTION AND DELIVERY OF THE PURCHASE AGREEMENT WILL CONTAIN ALL TERMS AND CONDITIONS OF THE PROPOSED TRANSACTION AND SHALL BE AGREED UPON BY THE PARTIES IN ACCORDANCE WITH THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT. The Confidentiality Agreement is hereby ratified and confirmed as a separate agreement between the parties thereto.

(ECF No. 92-1 at 19-20).

After signing the letter of intent, Defendant Chavez informed Gamez that he lacked authority to sign on behalf of Grupo Vidanta and that Grupo Vidanta was not a valid legal entity "demanded that Gamez agree in writing to 'amend [the LOI] to be non-binding and agree that all terms including jurisdiction will be determined by Vidanta and/or its assigned in the contract should we come to an agreement over the next 30 days.'" *Id.* at 33 (alteration in original).

On November 29, 2016, Gamez stated in an email to Defendant Chavez "We are honorable business people and do not use trickery with any document . . . . The LOI was signed in good faith and I hereby amend it to be non-binding and agree that all terms including jurisdiction will be determined by Vidanta and/or its assigned on the contract should we come to an agreement over the next 30 days." (ECF No. 91-2 at 8-9 (alteration in original) (emphasis omitted)).

On December 2, 2016, Defendant Chavez flew to San Diego for a tour of Plaintiff's facility to continue the negotiations to license Plaintiff's software. During the meeting, Defendant Chavez and his colleague Defendant Alfredo Negrete asked how Plaintiff got discounts on airfare because Grupo Vidanta had never been able to get discounted airfare. Plaintiff explained that "[i]f you don't have the volume, you don't get the discounts. So we grandfathered all of the volume that we had. We grandfathered everything that we had to bring in Vidanta just as if they had been in existence for 20 years. They had no volume in the airfare industry; so they would never qualify for discounts." *Id.* at 12 (alteration in original). Gamez stated in a deposition that "[t]he conversation there was basically all about airfare, how to get the best discount, what airlines, how come, how come they can get the discounts, searching for discounts on first class, business class, economy . . . almost all trade secrets." (ECF No. 91-1 at 98-99).

On February 1, 2017, Plaintiff and Ventus Riviera Maya, S.A. de C.V. (VRM) signed an agreement licensing Plaintiff's software. The agreement between Plaintiff and VRM, a Mexican company, "required the software portal to 'always supersede in function

and discount any competing or like product in features and value proposition to VRM . . . functioning means . . . discounts in air (variable) and hotels (at least 15%) relative to online sellers of travel . . . .'" (ECF No. 91-2 at 14 (alterations in original)). The agreement required that any action brought by either party arising out of the agreement shall be brought in Guadalajara, Jalisco. Defendant Chavez was not a party to the agreement between Plaintiff and VRM signed on February 1, 2017.

Gamez states that in July 2017 Defendant Chavez "requested the source code in a phone call and [that] Gamez thereafter called company staff to ask them to create a hard drive to be hand-delivered to [Defendant] Chavez." *Id.* at 18. Specifically, Gamez stated in a deposition:

> Q. . . . How did you give Mr. Chavez the source code?
> A. I gave him an external hard drive.
> . . .
> Q. What prompted you to ask all of the technicians at IDS to create a hard drive of the source code that you could provide to Mr. Chavez?
> . . .
> A. Because Daniel Chavez wanted it.
> Q. How do you know that Mr. Chavez wanted the source code?
> A. Because he asked me for it.
> Q. When?
> A. Several times when we talked.
> . . .
> Q. Did Mr. Chavez ever request the source code in -- in an e-mail?
> A. No. It was always over the phone.
> Q. And it was never over a text either?
> A. Maybe. I don't have the texts.
> Q. Okay. Did you e-mail anyone within IDS and indicate that Mr. Chavez had requested a copy of the source code?
> A. No. I called – immediately.

(ECF No. 90-6 at 40, 42). Defendant Chavez stated in a deposition:

> Q. . . . So you certainly deny telling him that you needed the source code, correct?
> A. Correct.
> Q. Okay. And you deny that Mr. Gamez gave you a copy of the source code, correct?

A. Correct.

(ECF No. 90-6 at 17-18). Defendant Chavez states in a sworn declaration that

> a. I never gave any other person or entity any hard drive containing any source code for the travel portal developed and/or customized and/or licensed by TIL;
> b. I never viewed any information on any hard drive containing any source code for the travel portal developed and/or customized and/or licensed by TIL;
> c. I never plugged into a computer any hard drive containing any source code for the travel portal developed and/or customized by TIL;
> d. I never sent any source code for the travel portal developed and/or customized and/or licensed by TIL to any person or entity via electronic or hard copy mail;
> e. I never uploaded any source code for the travel portal developed and/or customized and/or licensed by TIL to any website or web portal;
> f. I have never viewed the source code for the travel portal developed and/or customized and/or licensed by TIL;
> g. I have never downloaded the source code for the travel portal developed and/or customized and/or licensed by TIL;
> h. I have never modified the source code for the travel portal developed and/or customized and/or licensed by TIL; and
> i. I never used or directed anyone to use any of TIL's source code to make any website or online booking portal.

(ECF No. 90-3 at 2-3).

On July 31, 2017, VRM terminated its agreement with Plaintiff. (ECF No. 91-2 at 24). The July 31, 2017 Notice of Termination stated that VRM "based its termination on 'the constant failure by [Plaintiff] to adequately implement and furnish the Travel club Platform in due time according to the terms of the Agreement,' thereby granting [Plaintiff] a 30 day cure period." *Id.* at 25. VRM further stated that "VRM has experienced [sic.] operational deficiencies and cost increases from not having the capacity to implement the Travel Club Platform." *Id.* (second alteration in original). Defendant Chavez did not sign the Notice of Termination. *Id.* at 26.

On September 11, 2017, VRM sued Plaintiff in Mexico pursuant to paragraph 6.4.2 of the VRM Agreement requiring that any action be filed in Mexico. On May 6, 2019,

Plaintiff was served with the VRM lawsuit pursuant to the Hague Convention through its agent designated with the Wyoming Secretary of State. Plaintiff never appeared in the Mexican lawsuit.

On July 1, 2019, Plaintiff filed this action without naming VRM as a defendant.

On May 20, 2021, the judge in Mexico ruled that Plaintiff breached its contract with VRM and ordered "that the situation be returned to the de facto and de jure situation in which the plaintiff and defendant were found prior to the execution of the letter of intent executed on the 22nd on November of the year 2016 by VENTAS RIVIERA MAYA, VARIABLE CAPITAL CORPORATION, as the GRUPO VIDANTA, and T.I. LIMTED LLC EIN 81-4583535, as well as licensing and service agreement executed between VENTAS RIVIERA MAYA, VARIABLE CAPITAL CORPORATION, and T.I. LIMITED LLC EIN 81-4583535, on the 27th of January of the year 2017, as a result of which the parties shall return what they had received by virtue of said acts as if the aforementioned agreements had not been executed." (ECF No. 91-2 at 27-28).

### III. STANDARD OF REVIEW

"The inquiry performed [at the summary judgment stage] is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson*, 477 U.S. at 248.

"On summary judgment, the moving party bears the [initial] burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . , the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case" and not by "*negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 325.

The burden then shifts to the nonmovant to provide admissible evidence, beyond the pleadings, of specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 256. To survive summary judgment, the nonmovant cannot rest solely on "conclusory allegations of the complaint" or "conclusory allegations of an affidavit [or declaration]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "A conclusory, self-serving affidavit [or declaration], lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The nonmoving party's affidavit or "declaration is to be accepted as true" and the nonmoving party's "evidence should not be weighed against the evidence of" the moving party. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). "Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

## IV. DISCUSSION

### a. Violation of CPC § 502 (claim 2)

"The [Comprehensive Computer Data Access and Fraud Act] does not require *unauthorized* access. It merely requires *knowing* access . . . . What makes that access unlawful is that the person "without permission takes, copies, or makes use of" data on the computer. Cal Penal Code § 502(c)(2). "A plain reading of the statute demonstrates that its focus is on unauthorized taking or use of information . . . ." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). CPC § 502 states, in relevant part,

> (c) Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:
>
> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.
>
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
>
> . . .
>
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal Code § 502(c)(1)-(2), (7).

Defendant Chavez contends that Plaintiff cannot prove a claim for violation of CPC § 502. Defendant Chavez asserts that there is no evidence that he opened, viewed, or accessed any information on any hard drive provided by Plaintiff or that he uploaded or directed the uploading of user information in Plaintiff's system. Plaintiff contends that CPC § 502 does not require unauthorized access to a computer system and only requires knowing access to a computer system for unauthorized uses.

In this case, the evidence in the record shows that Gamez provided Defendant Chavez "a password to access the travel platform" on November 1, 2016. (ECF No. 92-1 at 10). In a November 1, 2016 email, Gamez told Defendant Chavez to "[f]eel free to navigate my portal" using member number 173010314 and the password demouser. (ECF No. 91-1 at 112). Defendant Chavez states that he "was never provided, used, or directed anyone else to use the danielvida username to log into any website, including preferredpassport.com." (ECF No. 91-2 at 23). Defendant Chavez has provided evidence that he did not "[k]nowingly access[ ]" or "[k]nowingly and without permission access[ ]" Plaintiff's "computer, computer system, or computer network." *See Celotex*, 477 U.S. at 325; Cal. Penal Code § 502(c)(1)-(2), (7).

The burden shifts to Plaintiff to provide admissible evidence, beyond the pleadings, of specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 256. Plaintiff has failed to submit log in data pertaining to the 173010314 member number, the demouser password, or the danielvida username or any other evidence to show that Defendant Chavez "[k]nowingly accesse[d]" or "[k]nowingly and without permission accesse[d]" Plaintiff's "computer, computer system, or computer network." Cal. Penal Code § 502(c)(1)-(2), (7). *See e.g., Pneuma Int'l, Inc. v. Yong Kwon Cho*, No. A151536, 2019 WL 3313607, at *5 (Cal. Ct. App. July 24, 2019) ("there was no evidence that Cho circumvented . . . barriers . . . to gain access to Pneuma's computer in late December 2013 [or] attempted to gain access to the Pneuma system at any other time after he left Pneuma's employment" in violation of Cal. Penal Code § 502(c)(7)). The Court grants summary judgment in favor of Defendant Chavez against Plaintiff for violation of CPC § 502 (claim 2).

### b. Violation of CCC § 3426 (claim 3)

"Under the [California Uniform Trade Secrets Act], a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff."

*CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 297 (2008). *See* Cal. Civ. Code § 3426 through 3426.11.

Defendant Chavez contends that Plaintiff fails to prove that its source code is a trade secret. Defendant Chavez asserts that Plaintiff fails to establish that the source code powered its software, that the source code worked, that its travel portal allegedly powered by the source code worked, and the net value of the source code. Defendant Chavez asserts that there is no evidence in this record that he gave or directed anyone to give any source code or any other trade secret to anyone.

Plaintiff contends that its travel portal is a trade secret and that the source code powers the travel portal. Plaintiff asserts that it gave Defendant Chavez access to its servers and provided Defendant Chavez with a list of its travel suppliers and vendors. Plaintiff asserts that it disclosed to Defendant Chavez the longevity of its relationships with vendors, commission structures and discounts from each vendor, the volumes required to obtain those commissions and discounts, and contact information for executives at various vendors. Plaintiff contends that Defendant Chavez acquired Plaintiff's trade secrets through improper means by promising profits and asserting authority to bind Grupo Vidanta, obtaining Plaintiff's trade secrets, and terminating the deal after Plaintiff customized the platform to Defendant Chavez's specifications.

In this case, the evidence in the record shows Defendant Chavez stated in a deposition that he "den[ied] telling [Gamez] that [he] needed the source code" and "den[ied] that [ ] Gamez gave [him] a copy of the source code . . . ." (ECF No. 90-6 at 17-18 (emphasis omitted)). Defendant Chavez states in a sworn declaration that

    a.    I never gave any other person or entity any hard drive containing any source code for the travel portal developed and/or customized and/or licensed by TIL;

    b.    I never viewed any information on any hard drive containing any source code for the travel portal developed and/or customized and/or licensed by TIL;

    c.    I never plugged into a computer any hard drive containing any source code for the travel portal developed and/or customized by TIL;

        d.    I never sent any source code for the travel portal developed and/or customized and/or licensed by TIL to any person or entity via electronic or hard copy mail;
        e.    I never uploaded any source code for the travel portal developed and/or customized and/or licensed by TIL to any website or web portal;
        f.    I have never viewed the source code for the travel portal developed and/or customized and/or licensed by TIL;
        g.    I have never downloaded the source code for the travel portal developed and/or customized and/or licensed by TIL;
        h.    I have never modified the source code for the travel portal developed and/or customized and/or licensed by TIL; and
        i.    I never used or directed anyone to use any of TIL's source code to make any website or online booking portal.

(ECF No. 90-3 at 2-3). Defendant Chavez has provided evidence that he did not "[a]cqui[re] [ ] a trade secret of another [while] know[ing] or ha[ving] reason to know that the trade secret was acquired by improper means" or "[d]isclos[e] or use [ ] a trade secret of another without express or implied consent . . . ." *See Celotex*, 477 U.S. at 325; Cal. Civ. Code § 3426.1(b).

    The burden shifts to Plaintiff to provide admissible evidence, beyond the pleadings, of specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 256. The evidence in the record shows that Gamez stated in a deposition that Defendant Chavez "asked [him] for" the source code "several times . . . over the phone" and that he "gave [Defendant Chavez the source code on] an external hard drive." (ECF No. 90-6 at 40, 42 (emphasis omitted)). Gamez stated that, during a December 2, 2016 tour of Plaintiff's facility, "[t]he conversation there was basically all about airfare, how to get the best discount, what airlines, how come, how come they can get the discounts, searching for discounts on first class, business class, economy . . . almost all trade secrets." (ECF No. 91-1 at 98-99). However, Plaintiff has failed to submit evidence that Defendant Chavez "acquired . . . plaintiff's trade secret[s] through improper means . . . ." or disclosed or used plaintiff's trade secrets for any purpose. *CytoDyn of New Mexico*, 160 Cal. App. 4th at 297; *see e.g.*, *Mintz*, 906 F. Supp. 2d at 1038 ("Priority Sports' Opposition is utterly devoid

of evidence that Plaintiff or CAA misappropriated any trade secrets belonging to Priority Sports" "in violation of California's Uniform Trade Secrets Act . . . ."); *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1173-74 (E.D. Cal. 2015) ("As to the revenue information, the citations in the declaration do not support any inference that the Corbells used or shared confidential revenue information" in violation of "the California Uniform Trade Secrets Act, California Civil Code § 3426.1 *et seq*."). Plaintiff has failed to present evidence to support a genuine issue of material fact as to a violation of CCC § 3426 by Defendant Chavez. The Court grants summary judgment in favor of Defendant Chavez against Plaintiff for violation of CCC § 3426 (claim 3).

### c. **Promissory Fraud (claim 4)**

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996). "Promissory fraud is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Id*. "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Id*. In a promissory fraud action, "something more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985).

> To be sure, fraudulent intent must often be established by circumstantial evidence. Prosser, for example, cites cases in which fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform. However, if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury.

*Id*. (citation omitted).

Defendant Chavez contends that Plaintiff fails to prove a claim for promissory fraud because Plaintiff relies on a non-binding letter of intent and Plaintiff's agreement with VRM was terminated by the signatory for cause. Defendant Chavez contends that Plaintiff fails to satisfy the requisite elements for promissory fraud. Defendant Chavez contends that the letter of intent was withdrawn by Gamez and ceased to exist once the agreement with VRM was signed. Defendant Chavez asserts that he was not an employee, officer, agent, director, or shareholder of VRM. Defendant Chavez asserts that there is no evidence that he made any statements without intent to perform.

Plaintiff contends that Defendant Chavez's conduct creates a triable issue of fact regarding promissory fraud. Plaintiff asserts that Defendant Chavez signed the letter of intent while representing that he was the agent of Grupo Vidanta with binding authority. Plaintiff asserts that Defendant Chavez admits that his promises in the letter of intent were false at the time they were made because Defendant Chavez was not an agent of Grupo Vidanta and because the company Grupo Vidanta did not exist. Plaintiff contends that Defendant Chavez intended to induce Plaintiff's reliance by acting as representing Grupo Vidanta's representative and promising profits only to immediately repudiate the letter of intent after Plaintiff signed it. Plaintiff contends that it sustained damages by giving up another licensing deal with an up-front payment of $250,000 plus monthly licensing fees based on the promise of an exclusive agreement with Grupo Vidanta. Plaintiff contends that it further sustained damages because Grupo Vidanta never paid the $25,000 per month as stated in the letter of intent and never paid the final invoice. Plaintiff contends that the letter of intent continues to bind Defendant Chavez because Defendant Chavez was not a party to the VRM agreement and the VRM agreement did not rescind the letter of intent.

In this case, the evidence in the record shows that Defendant Chavez stated in a November 22, 2016 email to Gamez that "[w]e are very excited to partner with you [t]o leverage your expertise, and to also capture all the lead gen opportunities we have discussed independent of the platform. This should result in great long term profit for you, and should be a solid win - win for all parties involved[]!" (ECF No. 92-1 at 16).

The evidence in the record shows that the letter of intent was dated November 22, 2016 "by 'Buyer: Grupo Vidanta by Daniel O. Chavez' and 'Seller T.I. Limited LLC [by] Al Gamez.'" (ECF No. 91-2 at 6 (alteration in original)). The letter of intent stated that it "represents an enforceable legal contract but is intended to be the foundation of a subsequent and more formal written contract." *Id*. at 6 (emphasis omitted). Paragraph 1(c) of the letter of intent stated that "[a]ll of the terms and conditions of the proposed transaction would be stated in the Licensing Agreement, to be negotiated, agreed and executed . . . ." *Id.* at 7 (alterations in original) (emphasis omitted). The letter of intent further stated that

> Binding Obligation. Except for Sections 1(c) and 2 through 6, THIS LETTER OF INTENT CONSTITUTES AND CREATES A BINDING AGREEMENT, AND SHALL BE DEEMED TO CONSTITUTE A LEGALLY BINDING AND ENFORCEABLE OBLIGATION ON THE PART OF BOTH PARTIES. THE EXECUTION AND DELIVERY OF THE PURCHASE AGREEMENT WILL CONTAIN ALL TERMS AND CONDITIONS OF THE PROPOSED TRANSACTION AND SHALL BE AGREED UPON BY THE PARTIES IN ACCORDANCE WITH THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT. The Confidentiality Agreement is hereby ratified and confirmed as a separate agreement between the parties thereto.

(ECF No. 92-1 at 19-20).

The evidence in the record shows that, seven days after signing the letter of intent, Defendant Chavez informed Gamez that he lacked the authority to bind Grupo Vidanta and "demanded that Gamez agree in writing to 'amend [the LOI] to be non-binding and agree that all terms including jurisdiction will be determined by Vidanta and/or its assigned in the contract should we come to an agreement over the next 30 days.'" *Id*. at 33 (alteration in original). Gamez stated in a November 29, 2016 email to Defendant Chavez that "[t]he LOI was signed in good faith and I hereby amend it to be non-binding and agree that all terms including jurisdiction will be determined by Vidanta and/or its assigned on the contract should we come to an agreement over the next 30 days." (ECF No. 91-2 at 8-9 (emphasis omitted)).

The evidence in the record shows that on February 1, 2017, Plaintiff and VRM signed an agreement. Defendant Chavez was not a party to the agreement between Plaintiff and VRM signed on February 1, 2017. On July 31, 2017, VRM terminated its agreement with Plaintiff. Defendant Chavez has provided evidence that the November 22, 2016 letter of intent promised a subsequent agreement, that the November 22, 2016 letter of intent was made non-binding on November 29, 2016, and that a subsequent agreement was signed on February 1, 2017. The burden shifts to Plaintiff to provide admissible evidence, beyond the pleadings, of specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 256. The evidence in the record shows that Chavez informed Plaintiff that he lacked authority to enter into the letter of intent, that Plaintiff agreed to rescind the letter of intent, and that Chavez continued to facilitate the subsequent agreement with VRM. Plaintiff has failed to come forward with evidence to show Defendant Chavez's "intent to defraud", "a promise [ ] made without" "intention to perform" by Defendant Chavez, or "justifiable reliance" on the letter of intent by Plaintiff. *Lazar*, 12 Cal. 4th at 638. The Court grants summary judgment in favor of Defendant Chavez against Plaintiff for promissory fraud (claim 4).

### d. Unfair Business Practices in Violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (claim 6)

Defendant Chavez contends that Plaintiff cannot prove a claim for violation of California Business & Professions Code §§ 17200 because Plaintiff fails to allege facts to put Defendant Chavez on notice of any UCL claim based on Defendant Chavez's individual actions. Plaintiff contends that Defendant Chavez established the opportunity to violate CPC § 502 and CCC § 3426.

California's Unfair Competition Law ("UCL") "prohibits 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1129-30 (9th Cir. 2014) (quoting Cal. Bus. & Prof. Code § 17200). "In prohibiting any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently

actionable." *Id*. "An unfair business practice is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008). "To state a claim under either [the fraudulent or unfair] prong, a plaintiff's burden of proof is modest: the representative plaintiff must show that members of the public are likely to be deceived by the practice." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017). "Actions for relief pursuant to [the UCL may] be prosecuted . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

In this case, Plaintiff premises the unfair competition claim on violations of CPC § 502, CCC § 3426, and promissory fraud. The Court has concluded that Defendant Chavez is entitled to summary judgment on Plaintiff's claims other than the unfair competition claim; accordingly, Defendant Chavez is entitled to summary judgment on the unfair competition claim. *See e.g.*, *Sansone v. Charter Commc'ns, Inc.*, No. 17cv1880-WQH-JLB, 2019 WL 4468174, at *16 (S.D. Cal. Sept. 18, 2019) ("In this case, Plaintiffs premise the unfair competition claim on violations of California Labor Code § 227.3. The Court has concluded that Defendants are entitled to summary judgment on the Plaintiffs' claims other than the unfair competition claim; accordingly, Defendants are entitled to summary judgment on the unfair competition claim."), *aff'd in part, rev'd in part and remanded on other grounds*, 831 F. App'x 801 (9th Cir. 2020).

### e. Violation of the CFAA (18 U.S.C. § 1030) (claim 1); Violation of Cal. Pen. Code § 496 (claim 5)

In his Motion for Summary Judgment, Defendant Chavez contends that Plaintiff cannot prove a claim for violation of the CFAA or California Penal Code § 496. In its Response in opposition, Plaintiff does not address its first or fifth claims or reference the CFAA (18 U.S.C. § 1030) or California Penal Code § 496. In his Reply, Defendant Chavez contends that Plaintiff has abandoned its first claim for violation of the CFAA and fifth claim for violation of Cal. Pen. Code § 496 against Defendant Chavez.

"A party abandons an issue [at summary judgment] when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009). In other words, a party "abandon[s] . . . claims by not addressing them in either [its] Motion for [ ] Summary Judgment or [its] Opposition to [a] Defendant[']s[] Motion for Summary Judgment . . . ." *Id*. The Court concludes that Plaintiff has abandoned its first and fifth claims against Defendant Chavez by not addressing them in its Response in opposition to Defendant Chavez's Motion for Summary Judgment. *See e.g., id.* ("Ramirez abandoned his state law claims by not addressing them in either his Motion for Partial Summary Judgment or his Opposition to Defendants' Motion for Summary Judgment . . . ."); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment."); *U.S. ex rel. Kelly v. Serco, Inc.*, No. 11cv2975 WQH–RBB, 2014 WL 4988462, at *12-13 (S.D. Cal. Oct. 6, 2014) (finding that the plaintiff abandoned a claim by not addressing the defendant's arguments regarding the claim in his opposition to summary judgment or at oral argument), *aff'd sub nom. United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017).

## V.   CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant Daniel Chavez (ECF No. 90) is GRANTED.

IT IS FURTHER ORDERED that this action is dismissed without prejudice as to Defendant Alfredo Negrete Gonzales for failure to prosecute.

The Clerk of the Court shall enter judgment for Defendant Daniel Chavez and against Plaintiff TI, Limited and close this case.

Dated:  October 7, 2021

Hon. William Q. Hayes
United States District Court